# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**NATIONAL NURSES ORGANIZING COMMITTEE-MISSOURI & KANSAS/NATIONAL NURSES UNITED,**

   **Plaintiff,**

   v.

**MIDWEST DIVISION – MMC, LLC D/B/A MENORAH MEDICAL CENTER,**

   **Defendant.**

Case No. 2:20-CV-2571-JAR-JPO

## MEMORANDUM AND ORDER

Plaintiff National Nurses Organizing Committee – Missouri & Kansas/National Nurses United ("NNOC" or the "Union") brings suit against Defendant Midwest Division – MMC, LLC d/b/a Menorah Medical Center ("MMC") pursuant to § 301 under the Labor Management Relations Act ("LMRA").[1] It seeks to compel arbitration under the parties' collective bargaining agreement ("CBA").

MMC filed a Motion to Dismiss (Doc. 11) asserting that the Union failed to state a claim. Subsequent to that motion, both parties filed Motions for Summary Judgment (Docs. 20, 27). The Union asserts that the dispute between the parties is covered by the arbitration agreement and thus MMC should be compelled to arbitrate. MMC asserts that the arbitration agreement does not cover the dispute and thus the Court cannot compel arbitration between the parties. The motions are fully briefed, and the Court is prepared to rule. For the reasons stated in more detail

---
[1] 29 U.S.C. § 185.

below, the Court denies the Union's motion for summary judgment, grants MMC's motion for summary judgment, and denies MMC's motion to dismiss as moot.

I.  **Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[2] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[3] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[4] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[5] An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[6]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[7] Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8] The nonmoving party may not simply rest upon its pleadings to satisfy its

---

[2] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[3] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[4] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[5] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[6] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[7] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

[8] *Anderson*, 477 U.S. at 256.

burden.[9] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript[,] or a specific exhibit incorporated therein."[11] The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[12] Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"[13]

## II. Uncontroverted Facts

Plaintiff Union and Defendant MMC are parties to a CBA effective October 21, 2018 through May 31, 2021.[14] On or about June 28, 2020, MMC implemented new staffing grids. Approximately two weeks later, on July 15, 2020, the Union filed a grievance alleging that MMC's implementation of the new staffing grids displaced bargaining unit employees with supervisory employees in the performance of bargaining unit work.

Specifically, the grievance asserted that the "[n]ature of the grievance" was "currently + ongoing the hospital intends to displace bargaining unit RNs with supervisory RNs in the performance of bargaining unit work as expressed in the hospitals staffing grids they implemented 6/28/2020 in which they removed Registered nurses in the bargaining unit."[15] The

---

[9] *Id.*; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[10] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671).

[11] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[12] *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[13] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[14] Relevant provision of the CBA will be set forth in the Court's discussion.

[15] Doc. 21-1 at 85.

Union also asserted that the grievance violated Article 4 of the CBA and "all applicable."[16] Finally, the Union requested the remedy of "cease + desist from utilizing these staffing grids they proposed [and] then implemented on 6/28/2020. Hold staffing committee per the CBA [and] amend the proposed grids to conform [with] the CBA. Return the RNs you have removed."[17]

By email on June 19, 2020, MMC informed the Union, in part, "[t]he allegations in the grievance are not grievable or arbitrable. The Hospital will not be processing this grievance."[18]

The Union contacted the Federal Mediation and Conciliation Service ("FMCS") for a list of arbitrators available to hear the grievance. FMCS sent the parties a list of arbitrators. On July 28, 2020, MMC, through its agent HCA Management Services, wrote the Union stating that it was in receipt of an arbitrator panel. It also stated that "this matter is neither grievable nor arbitrable. We will not be processing this further."[19]

On November 11, 2020, the Union filed its Complaint seeking to compel MMC to proceed to arbitration. MMC filed a motion to dismiss asserting that the Union failed to state a claim. The parties then filed cross motions for summary judgment. The Union asserts that the CBA covers the dispute at issue and the parties should be compelled to arbitrate. MMC disagrees and contends that the dispute is not covered by the CBA and thus arbitration is not required.

### III. Discussion

---

[16] *Id.*
[17] *Id.*
[18] *Id.* at 87.
[19] *Id.* at 120.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[20] "Whether a CBA creates a duty to arbitrate a particular grievance is an issue for judicial determination unless the parties clearly and unmistakenly provide otherwise."[21] When a CBA contains an arbitration provision, "courts apply a presumption of arbitrability," particularly when the arbitration clause is broad.[22] In addition, when a CBA contains an arbitration clause, "the court should not deny an order to arbitrate 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"[23] If there are any doubts, they "should be resolved in favor of coverage."[24] Absent "any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."[25]

In this case, the parties disagree as to whether the dispute is covered by the CBA. The Union contends that the grievance is subject to arbitration while MMC asserts that the dispute is excluded. The parties rely on different CBA provisions to support their respective positions. The Union contends that Articles 4 and 14 are applicable.

Article 4 of the CBA, "Bargaining Unit Work," provides:

> It is not the intent of the Hospital to displace bargaining unit employees with supervisory employees in the performance of bargaining unit work. It is understood, however, that nothing in this Agreement shall preclude members of management from

---

[20] *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citations omitted).

[21] *Paper, Allied, Chem. & Energy Workers Int'l Union v. Slurry Explosive Corp.*, 107 F. Supp. 2d 1311, 1322 (D. Kan. 2000) (citing *AT&T Techs.*, 475 U.S. at 649).

[22] *Id.* (citing *AT&T Techs.*, 475 U.S. at 650).

[23] *Id.* (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).

[24] *Id.* (quoting *AT&T Techs.*, 475 U.S. at 648–50).

[25] *United Steelworkers*, 363 U.S. at 584–85.

performing bargaining unit work when such work occurs during
the course of training, in the event of an emergency, due to
schedule or unscheduled employee absences, due to an increase in
patient census or workload, consistent with past practice and/or
when such work or assistance is otherwise necessary for the timely
provision of quality patient care. . . .[26]

Article 14, Section 1(A) defines a "Grievance" as "[a]n alleged breach of the terms and provisions of this Agreement," and Article 14, Section 1(B) defines "Grievant" as "[a] unit member, a group of unit members, or the Union."[27] Article 14, Section 2(A) provides:

> If a grievance affects more than one unit or department of the
> Hospital, and relief is unavailable from the immediate supervisor,
> it may be submitted immediately at Step Two. All grievances must
> state the specific contractual provision(s) of this Agreement
> allegedly violated, the specific event(s) (including names known or
> that become known to the Union during the grievance/arbitration
> process of persons allegedly involved) that give rise to the
> grievance and the remedy sought.[28]

Grievances that are not resolved through the grievance procedure may be appealed to arbitration pursuant to Article 3 of the CBA:

> Section 1.   Appeals to Arbitration
>
> If the grievance is not resolved after completion of Step 2 of the
> Grievance Procedure, the Union may advance the grievance to
> arbitration by first submitting a written demand (by USPS, email,
> facsimile or hand-deliver) for arbitration to the Hospital's Chief
> Nursing Officer or previously authorized designee within thirty
> (30) calendar days of receiving the Step 2 response and, second,
> within the same thirty (30) days of receipt of the Step 2 response,
> requesting (with a copy to the Hospital Human Resources
> Department) to the Federal Mediation and Conciliation Service
> ("FMCS") for a list of eleven (11) arbitrators who have hospital
> arbitration experience. . . .
>
> Section 2.   Mediation

---

[26] Doc. 21-1 at 9–10.

[27] *Id.* at 18.

[28] *Id.*

> Within ten (10) calendar days of the Union's notification of its intent to arbitrate, either party may request the other to participate in mediation. . . .
>
> Section 3.    Limits of Arbitrator
>
> The arbitrator shall have no power to:
> . . . .
>
> B.    Hear or decide any dispute as to the exercise of the Hospital's management rights as set out in Article 19 (Management Rights) of this Agreement. . . .[29]

The Union started grievance procedures pursuant to Article 14 based on its allegation that MMC's staffing grids violated Article 4 of the CBA. And pursuant to Article 3, the Union asserts that the Court should compel arbitration of this dispute.

MMC contends that the dispute is excluded from arbitration and relies on Articles 34 and 19. Specifically, MMC contends that Article 34 covers staffing issues. Article 34, entitled "Staffing Committee," provides:

> A.    The Hospital shall have a staffing system based on the assessment of patient needs in conformance with the accreditation requirements of The Joint Commission and a Hospital Staffing Plan as required by the CMS Federal Regulations and Guidelines and Kansas Statutes and Regulations.
>
> B.    The Hospital's Staffing Plan provides the basis for acuity based staffing decisions within the Hospital by providing guidance on nurse-to-patient staffing levels for staffing coverage in patient care units at the Hospital. A copy of the approved nurse staffing levels from the Hospital Staffing Plan shall be provided to the National Nurses United Professional Practices Committee (NNUPPC) members and made available to bargaining unit RNs in all patient care departments.
>
> C.    Changes to the staffing plan for patient care services shall be developed based on the level and scope of care that meets the needs of the patient population, including patient acuity, the frequency of the care to be provided, and a determination of the

---

[29] *Id.* at 8–9.

level of staff that can most appropriately provide the type of care needed.

D.     The Hospital and the Union shall establish a Nurse Staffing Committee ("Committee") to review the staffing standards and plans contained within each patient care department staffing guideline.
. . . .

F.     Disagreements among the Committee members or between the Hospital and the Union regarding issues covered by this Article, including disagreements related to staffing plans and the methods to monitor compliance with the plans, that cannot be resolved mutually by the parties shall not be subject to the grievance and arbitration procedures of this Agreement, any dispute resolution process other than mediation, as set forth in Paragraph G below, or administrative or other legal challenge. . . .

G.     The parties agree, consistent with Article 19 (Management Rights), that the Hospital maintains the ultimate financial, operational and legal responsibility of providing appropriate staffing.

    1.     The parties agree that the Hospital has the right to amend the terms of the staffing levels set forth in the Hospital Staffing Plan, except the nurse-to-patient staffing levels contained within the grid that specify staffing levels for nurses, which may only be amended by the Hospital upon at least thirty (30) days' notice to the Committee and the Union. . . .

    2.     If the Hospital's proposed amendment are not so approved by the Committee, the dispute shall be referred immediately to mediation pursuant to the following procedure:

        a.     A designated mediator shall be mutually selected and scheduled by the Hospital and the Union to handle all disputes under this Article. If the parties have not agreed upon such a mediator within ninety (90) days of the date of ratification of this Agreement, a mediator shall be appointed by the Federal Mediation and Conciliation Service for each dispute that is referred to mediation under this Article. . . .[30]

---

[30] *Id.* at 40–43.

In addition, MMC asserts that Article 19 of the CBA excludes the dispute from arbitration. Article 19, "Management Rights," provides:

> Section 1.    In General
>
> Except as specifically and clearly abridged by an express provision of this Agreement, nothing in this Agreement shall be interpreted as interfering in any way with the Hospital's right to determine and direct the policies, modes and methods of performing work or providing patient care, including but not limited to:
> . . . .
>
> F.    To determine the number, location and types of facilities, if any, it will maintain, to decide the staffing levels and/or ratios, the types of patients, and the classifications and qualifications of employees that may be assigned to any unit, shift procedure, group of patients, or job;
> . . . .
>
> P.    To establish and alter working schedules;
> . . . .
>
> Thus, the Hospital reserves and retains, solely and exclusively, all of the rights, privileges and prerogatives which it would have in the absence of this Agreement, regardless of the frequency or infrequency with which such rights have been exercised in the past, except to the extent that such rights, privileges and prerogatives are specifically and clearly abridged by express provisions of this Agreement.
>
> It is understood that nothing in this Agreement shall preclude persons employed in supervisory, managerial or other non-bargaining unit positions from performing bargaining unit work.
>
> Section 2.    Intended Effect
>
> The Hospital's exercise of its reserved rights described in Section 1 above shall not be subject to the grievance and arbitration provisions of this Agreement. Further, there shall be no duty to bargain over the Hospital's decision to exercise, or the effects of the exercise of, the management rights described in Section 1 above.[31]

---

[31] *Id.* at 25–26.

Thus, MMC asserts that these provisions demonstrate that the issue between the parties is not arbitrable.

As noted above, it is for the Court to determine whether the dispute between the parties is subject to arbitration. Here, the Union's grievance states that the nature of its grievance is MMC's intent "to displace bargaining unit RNs with supervisory RNs in the performance of bargaining unit work as expressed in the hospital's staffing grids implemented on 6/28/2020." The plain language of the grievance appears to reference both something that is arbitrable (the displacement of bargaining unit RNs in Article 4) and something that may be excluded from arbitration (staffing issues in Article 34 and/or management decisions in Article 19).

Both parties agree that under well-settled principles of contract interpretation, that "[a]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."[32] They disagree, however, as to which provision will be nullified. The Union contends that MMC's interpretation would nullify Article 4, and MMC asserts that the Union's interpretation would nullify Articles 34 and 19.

The Court agrees with MMC. Although the Union contends that MMC's reliance on Articles 34 and 19 writes Article 4 completely out of the CBA, the Court disagrees. Instead, the Court must consider the CBA as a whole to determine the parties' intent, and Articles 34 and 19 address staffing issues and set forth detailed procedures regarding staffing disputes. Article 34 does not allow MMC full authority to determine staffing or the ability to displace bargaining unit RNs with supervisory RNs. Instead, it sets forth procedures for staffing plans and a staffing

---

[32] Restatement (Second) of Contracts, § 203(a) (1981); *see also* Doc. 21 at 6 (Plaintiff's brief citing the Restatement) and Doc. 28 at 23 (Defendant's brief citing the Restatement).

committee that includes the Union. It also specifically sets forth a procedure on how to handle disputes or disagreements between MMC and the Union on staffing issues—mediation. It explicitly states that staffing disagreements "that cannot be resolved mutually by the parties shall not be subject to the grievance and arbitration procedures of this Agreement."[33] Furthermore, Article 34 references Article 19 and states that "consistent with Article 19 (Management Rights), [] the Hospital maintains the ultimate financial, operational and legal responsibility of providing appropriate staffing."[34] And Article 19 specifically states that management decisions are not subject to the arbitration and grievance procedures.

In addition, Article 3 of the CBA, the arbitration provision, specifically places limits on the arbitrator by noting that "[t]he arbitrator shall have no power to . . . [h]ear or decide any dispute as to the exercise of the Hospital's management rights as set out in Article 19 (Management Rights) of this Agreement."[35] Thus, although the CBA contains an arbitration clause, the CBA also specifically excludes certain matters from arbitration in Articles 34, 19, and 3. Because "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit,"[36] and the express provisions in the CBA exclude staffing issues from arbitration, the Court cannot compel MMC to arbitrate this particular dispute.

The Court's conclusion is bolstered by the requested remedy in the Union's grievance. The Union requests that MMC "cease and desist from utilizing these staffing grids" and to "hold staffing committee per the CBA [and] amend the proposed grids to conform [with] the CBA."[37]

---

[33] Doc. 21-1 at 42.

[34] *Id.*

[35] *Id.* at 8–9.

[36] *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citation omitted).

[37] Doc. 21-1 at 85.

The staffing committee and staffing grids are discussed throughout Article 34 and contemplate that should a disagreement occur regarding staffing levels and grids, it should be referred to mediation. Thus, there is a procedure in place for staffing disagreements, but arbitration is not it.

The Court makes one final note. The Union directs the Court's attention to a recent decision in the Western District of Missouri, *National Nurses Organizing Committee-Missouri & Kansas/National Nurses United v. Midwest Division – RMC, LLC*, a case with similar facts in which the district court determined that the dispute fell under the CBA's arbitration provision.[38] The court there reasoned that the Article addressing "staffing" set forth acuity-based staffing coverage and nurse-to-patient staffing levels but it did not encompass any and all staffing disputes.[39] Because the grievance did not allege or implicate a dispute about the acuity-based staffing coverage and nurse-to-patient staffing levels and instead specifically stated that it related to displacement of bargaining unit RNs with supervisory nurses in the performance of bargaining unit work, the court found that it could not say with positive assurance that the CBA did not cover the grievance.[40]

This Court is not bound by the Western District of Missouri's holding and interpretation of the CBA in front of it.[41] Here, the Court finds that Article 34 does encompass the staffing dispute raised by this grievance. And although Article 4 provides that it is not intended to displace bargaining unit RNs with supervisory RNs, as noted above, the parties specifically negotiated a detailed provision regarding a staffing system and procedures. The Union has rights

---

[38] No. 20-CV-00903-SRB, 2021 WL 1671676 (W.D. Mo. Apr. 28, 2021). This case is on appeal to the Eighth Circuit Court of Appeals.

[39] *Id*. at *5.

[40] *Id*.

[41] The parties direct the Court to both similar and different provisions in the CBAs.

12

to participate in the staffing plans, and there is a detailed procedure should disagreements arise between the parties which explicitly excludes arbitration.

Furthermore, the Western District of Missouri did not set forth or discuss any CBA provision relating to the Article addressing Management Rights and the limits placed on arbitrability related to those type of disputes.  As noted above, Article 19 of the CBA here provides that "[e]xcept as specifically and clearly abridged by an express provision of this Agreement, nothing in this Agreement shall be interpreted as interfering in any way with the Hospital's right to determine and  . . . to decide the staffing levels and/or ratios."[42]  Article 19 also states that the "intended effect" of "[t]he Hospital's exercise of its reserved rights described in [Article 19] Section 1 above shall not be subject to the grievance and arbitration provisions of this Agreement."[43]  And Article 3, the provision of the CBA addressing arbitration, places a limit on the arbitrator to determine issues relating to Article 19 by providing that the arbitrator "shall have no power to . . . [h]ear or decide any dispute as to the exercise of the Hospital's management rights as set out in Article 19 (Management Rights) of this Agreement."  Thus, although the CBA here contains similar language to the CBA in front of the Western District of Missouri, they are not identical, and the CBA in front of this Court appears to further limit and exclude certain disputes from arbitration.

In sum, the Court finds that the dispute here is excluded from arbitration and thus MMC cannot be compelled to arbitrate.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss (Doc. 11) is **denied as moot**.

---

[42] Doc. 21-1 at 25.

[43] *Id.* at 26.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 20) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 27) is **granted**.

**IT IS SO ORDERED.**

Dated: July 16, 2021

                                              S/ Julie A. Robinson
                                              JULIE A. ROBINSON
                                              CHIEF UNITED STATES DISTRICT JUDGE